UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ALISTER COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15-cv-01489-LSC-SGC |
| | ) |
| LIEUTENANT RONALD CARTER, | ) |
| | ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff filed a *pro se* amended complaint seeking monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983, for violations of his civil rights. (Doc. 11). The sole, remaining defendant in this matter is Alabama Department of Corrections Lieutenant Ronald Carter. The plaintiff seeks injunctive relief and compensatory damages for the defendant's alleged failure to protect him from physical harm and the mental health issues this caused. (*Id.* at 4; Doc. 23 at 4). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

**I. Procedural History**

On May 25, 2016, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the supplemented amended complaint to

the remaining defendant and directing the defendant to file a special report addressing the plaintiff's factual allegations. (Doc. 19). The undersigned advised the defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. (*Id.*). On July 20, 2016, the undersigned entered a supplemental order for special report requiring the defendant to respond to additional allegations made by the plaintiff. (Doc. 24).

On August 26, 2016, the defendant filed a special report, supplemented by his affidavit and the affidavit of Warden Kenneth Peters. (Doc. 30). On October 13, 2016, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 36). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Rule 56. (*Id.*); see *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On March 1, 2017, the plaintiff filed a response. (Doc. 39).

## II. Standard of Review

Because the court has construed the defendant's special report as a motion for summary judgment, Rule 56 governs the resolution of the motion. Under Rule

2

56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts

The plaintiff is an inmate in the custody of the Alabama Department of Corrections and is presently housed in the Limestone Correctional Facility in Harvest, Alabama. His claims relate to events which occurred at the St. Clair Correctional Facility in Springville, Alabama, in February 2014.[1] The plaintiff alleges the defendant failed to protect him from attack by another inmate, despite being advised that the plaintiff was in danger. (Doc. 11).

On the Friday before the attack, the plaintiff and his cell-mate met with an unnamed lieutenant, advising the lieutenant that they could not get along and requesting they be moved to separate cells. (Doc. 15 at 5). The lieutenant advised

---

[1] The plaintiff identifies the date of the events as "on or about February 21, 2014" (Doc. 15 at 5), while the defendant identifies the date as February 25, 2014 (Doc. 30-3).

them that neither could be moved until the next the Monday and had them sign a "living agreement," agreeing to refrain from confrontation until then. (*Id.*). The next Monday, the plaintiff and his cell mate got into argument, and the cell mate came at him with a knife, although the attack was thwarted when an officer called the inmates out to chow call. (*Id.* at 6). During and after the mealtime, the plaintiff attempted to explain his predicament to a lieutenant, a sergeant, and a captain but was ignored. (*Id.* at 6-7). When he arrived back at his assigned living area, the plaintiff noticed that his personal belongings had been strewn over the landing, and inmates on the landing were yelling to the cubical officer that "[i]f you let him in we are going to kill him." (*Id.* at 7). At this point, the plaintiff went to see the defendant, Lieutenant Carter, and explained his situation; Carter told him "[t]here is nothing I can do for you Cook … you are going to have to go to your assigned dorm and sleep in your assigned cell." (*Id.* at 7-8).[2]

The plaintiff met another unnamed officer on the way back to his dorm and "pleaded" with the officer to "talk to Lieutenant Carter for me" but was told he would have to follow Carter's order to return to his dorm. (Doc. 15 at 8). Although inmates were still making threats when he returned to his dorm, an

---

[2] The plaintiff told the defendant that his cell mate had recently threatened him with a knife, that at that moment his belongings had been thrown out onto the landing, and that "there were inmates on the landing with knives saying, 'If you let him in we gone (sic) kill him.'" (Doc. 39). Without directly addressing these specific facts, the defendant simply alleges in general terms that he "had no prior knowledge [the plaintiff] was in harms' way and could not live in population." (Doc. 30-3).

5

officer instructed the plaintiff that he must go in, at which point he "grabbed [his] mattress for protection" after seeing his cell mate standing nearby with a knife. (*Id*.). The plaintiff stood holding his mattress with his back against the wall when another inmate tried to take the mattress from him. (*Id*. at 9). As the two were fighting, the cell mate stabbed the plaintiff twice in the back, resulting in his being transported to the hospital for treatment. (*Id*. at 9-10).[3] The plaintiff now seeks compensatory damages and injunctive relief. (Doc. 11 at 4; Doc. 23 at 2).

## IV. Analysis

It is well settled that "[t]he Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners." *Rodriguez v. Secretary for the Department of Corrections*, 508 F.3d 611, 616-17 (11th Cir. 2007) (*quoting Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).[4] Therefore, "[a] prison official violates the Eighth Amendment when he actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." *Id*. at 617. "Whether a prison official had the requisite knowledge of a

---

[3] The defendant's special report acknowledges the plaintiff's injuries and that the plaintiff was transported to the hospital for treatment. (Doc. 30-2). The defendant states that once he became aware of the altercation, he "ensured [the plaintiff] was given medical treatment, removed from population and reviewed for a change in custody." (Doc. 30-3 at 2).

[4] "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).

6

substantial risk is a *question of fact* subject to demonstration in the usual ways, including circumstantial evidence." *Id*. at 617; *quoting Farmer* at 842. (emphasis in original).

In this instance, the plaintiff has demonstrated a genuine issue of fact with respect to the defendant's subjective knowledge of the potential harm he faced. The plaintiff specifically states that he explained the situation to the defendant, including the fact that his cell mate had threatened him with a knife earlier that day, that his belongings had been strewn about the landing, and that inmates with weapons were making direct threats to kill him if he was allowed back into the living area. (Doc. 39; Doc. 15 at 7-8). Based upon these sworn allegations, a reasonable jury could find that the defendant was subjectively aware of a substantial risk of harm to the plaintiff. The defendant's general denial in that regard simply creates an issue for the trier of fact.

The second component of the plaintiff's Eighth Amendment claim is whether or not the defendant responded in an objectively reasonable manner. In that regard, even if a prison official is actually aware of a substantial risk to inmate health or safety, he may escape liability if he reasonably responds to the risk, even if the harm ultimately occurs. *Rodriguez*, 508 F.3d at 619-620. An official acts in an objectively unreasonable manner if he knows of ways to reduce the harm but knowingly or recklessly declines to act. *Id*. at 620. In this case, after being

advised that the plaintiff's life had been, and continued to be, threatened by other inmates in the living quarters, the defendant's response was to order the plaintiff to "go back to [his] assigned dorm and sleep in [his] assigned cell." Under the circumstances existing within the dorm at that time and the plaintiff's explicit description of the situation to the defendant, a reasonable jury could conclude that the defendant acted unreasonably by failing to intervene and by ordering the plaintiff to go back to his assigned cell.

Finally, to survive summary judgment, the plaintiff must create a genuine issue of fact with regard to the issue of causation. In that regard, the "critical question" is whether or not the defendant "was in a position to take steps that could have averted the stabbing incident … but through deliberate indifference, failed to do so." *Rodriguez*, 508 F.3d at 623 (*quoting Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) (internal punctuation omitted)). In this instance, there is sufficient evidence in the record that the defendant, a lieutenant, was in a position to take steps to prevent the harm that befell the plaintiff. In his own affidavit, the defendant states that, after the stabbing, he "ensured Inmate Cook was … removed from population and reviewed for a change of custody." (Doc. 30-3 at 2). These are obviously steps that could have been taken *before* the plaintiff incurred his injuries, and a reasonable jury could conclude that the defendant was deliberately

indifferent in failing to take those steps after learning of the plaintiff's predicament.

## V. Recommendation

Accordingly, for the reasons stated above, the undersigned **RECOMMENDS** the defendant's motion for summary judgment be **DENIED** and that this matter be **REFERRED** to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 8th day of May, 2017.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE